**STATE of Indiana ex rel. INDIANA DEPARTMENT OF REVENUE, Appellant (Plaintiff Below),**

v.

**Timothy L. DEATON and Marie E. Deaton, Appellees (Defendants Below).**

No. 73S01–0104–CV–207.

Supreme Court of Indiana.

Sept. 26, 2001.

---

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Kurt St. Angelo, Indianapolis, IN, Attorney for Appellee.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

We hold that the Indiana Department of Revenue may collect a tax judgment lien through proceedings supplemental in a court in any county where the taxpayer owns property without first filing suit and obtaining a judgment foreclosing the lien.

### Factual and Procedural Background

When the Department reasonably believes an income tax return does not reflect the proper amount of tax due, the Department may issue an assessment. Ind.Code § 6–8.1–5–1(a) (1998). If the taxpayer disagrees with that assessment, the taxpayer may protest it at the administrative level. *Id.* § 6–8.1–5–1(c). If the Department denies the protest and issues a letter of finding, that letter becomes a final determination, and the taxpayer must pursue further review by requesting a rehearing or by pursuing an appeal to the Tax Court. *Id.* § 6–8.1–5–1(e–h). The statute provides that failure to pursue an appeal through the Tax Court conclusively

establishes the amount of taxes owed. *Id.* §§ 6–8.1–5–1(i–j) & 33–3–5–11(a).

The Department assessed a deficiency against the Deatons as to their state income tax return, apparently for 1993. The Deatons protested unsuccessfully and received a letter of finding from the Department. They neither sought rehearing nor pursued an appeal to the Tax Court. Acting pursuant to Indiana Code section 6–8.1–8–2(a), the Department issued a demand notice to the Deatons for the total amount due. When the Deatons still did not pay, the Department issued a tax warrant for $1901 pursuant to section 6–8.1–8–2(b). The Department next filed that warrant with the Shelby Clerk. The statute provides that at this point the warrant became a judgment lien against the Deatons, attaching to all of their real and personal property in Shelby County. *Id.* § 6–8.1–8–2(e).

The Department next instituted proceedings supplemental in the small claims division of the Shelby Superior Court. The Deatons moved to dismiss, contending that the court lacked personal jurisdiction over them because the Department had not filed a complaint and obtained a judgment against them in that court. The crux of the Deatons' position is their contention that the "judgment lien" described in the tax statute is not a judgment. The trial court and the Court of Appeals agreed, holding that the Department is required to file an independent lawsuit in a court of general jurisdiction and obtain a judgment foreclosing its lien before it can pursue proceedings supplemental in that court. *State ex rel. Indiana Dep't. of Revenue v. Deaton,* 738 N.E.2d 695, 698–700 (Ind.Ct. App.2000). This Court granted transfer.

### I. Proceedings Supplemental to Collect a Tax Judgment Lien

■ The Deatons argued, and the majority of the Court of Appeals held, that the Department must "domesticate'" its final determination by filing suit and obtaining a judgment foreclosing its lien in an Indiana court of general jurisdiction before it may begin proceedings supplemental. *Deaton,* 738 N.E.2d at 700. As support for this proposition, the Deatons and the Court of Appeals cite *Borgman v. Aikens,* 681 N.E.2d 213, 220 (Ind.Ct.App. 1997), *trans. denied,* in which the Court of Appeals held that an Indiana court of general jurisdiction could enforce a federal judgment or a judgment from another Indiana county through proceedings supplemental only if the judgment was first domesticated.

In *Borgman,* the Court of Appeals relied on *Stocker v. Cataldi,* 521 N.E.2d 716, 718 (Ind.Ct.App.1988), which held that a trial court properly dismissed a complaint for proceedings supplemental for lack of jurisdiction where that court had not rendered the original judgment. *Stocker,* in turn, was based on the language of Indiana Trial Rule 69(E), which states in pertinent part, "[P]roceedings supplemental to execution may be enforced ... in the court where the judgment is rendered." In the case of tax lien enforcement, however, the statutory framework overlays the general Trial Rule governing proceedings supplemental. When a tax warrant that embodies an unappealed final determination of the Department is recorded in the judgment record of a county court, the statute provides that the warrant becomes a "judgment lien" of that court, and the court acquires jurisdiction for the limited purpose of enforcing the judgment lien. We think the General Assembly intended by this language to provide that the "judgment lien" for the tax obligation has the status of a judgment of the court of general jurisdiction.

■ In Indiana, the Tax Court has exclusive jurisdiction over "any case that

arises under the tax laws of this state and that is an initial appeal of a final determination" of the Department. Ind.Code § 33–3–5–2(a) (1998). A case "arises under" the tax laws of Indiana if an Indiana tax statute creates the right of action, or if the case principally involves collection of a tax or defenses to that collection. *State v. Sproles,* 672 N.E.2d 1353, 1357 (Ind.1996). The Deatons' case principally, indeed solely, involves the collection of taxes or defenses to that collection, and so arises under the tax laws of Indiana. Resort to a court of general jurisdiction to challenge a tax is precluded by this grant of exclusive jurisdiction. *Id.*

The domestication of judgments from other courts described in *Borgman* permits the domesticating court to entertain attacks on the validity of the judgment itself, either for want of personal jurisdiction or subject matter jurisdiction. *Am. Mgmt., Inc., v. Riverside Nat'l Bank,* 725 N.E.2d 930, 933 (Ind.Ct.App.2000). If this were permitted as to tax liability, it would be inconsistent with the grant of exclusive jurisdiction to the Tax Court to hear these issues. If, on the other hand, litigation in the court of general jurisdiction is foreclosed even in a domestication proceeding, then that proceeding becomes a purely perfunctory waste of time and resources. This exclusive grant of jurisdiction to the Tax Court thus strongly suggests that no independent domestication proceeding is contemplated under the tax statutes.

Section 6–8.1–8–8 also supports the view that a "judgment lien" as that term is used in that section is intended to be a final judgment. That section provides that after a tax warrant becomes a judgment lien, the Department may seize bank accounts, garnish earnings, and levy upon and sell property, all without subsequent judicial proceedings. The Deatons contend, and the Court of Appeals held, that section 6–

8.1–8–8 operates only to limit the actions the Department may take without subsequent judicial proceedings to these three specifically enumerated ones. *Deaton,* 738 N.E.2d at 699. We do not agree. Section 6–8.1–8–7 states that "the remedies for tax collection provided to the department under this chapter are cumulative and the selection or use of one (1) of the remedies does not preclude the subsequent or corresponding use of one (1) or more of the other remedies." Therefore, absent express limiting language, section 6–8.1–8–8 cannot be construed to be an exhaustive list of remedies available to the Department without initiating subsequent judicial proceedings. Rather, it authorizes summary collection proceedings without further judicial action. This demonstrates the understanding of the General Assembly that once a tax warrant becomes a judgment lien, the day for disputing the tax is over, and the matter has progressed to the collection stage. And, of course, proceedings supplemental are one means of collecting. As the Court of Appeals pointed out, a "judgment lien" may fairly be regarded as distinct from a judgment. In this context, however, we believe the General Assembly equated the two.

For these reasons we hold that, unless and until it is appealed to the Tax Court, a final determination of the Department is the equivalent of a judgment, and when the tax warrant that embodies that final determination is recorded as a judgment lien in the judgment record of a county court, the warrant becomes a judgment of that court, which thereby acquires jurisdiction for the limited purpose of enforcing the judgment. The judgment may be enforced as any other judgment of the court, including by means of proceedings supplemental. Accordingly, the Deatons' motion to dismiss should have been denied, and the Shelby Superior Court should have

allowed the Department to commence proceedings supplemental.

## II. Adequacy of Notice under the Income Tax Statute

A final concern raised by both the Deatons and the Court of Appeals is whether the notice procedures used by the Department meet constitutional due process standards. Throughout its tax collection administrative proceedings, the Department is authorized to send all notices to the taxpayer by first class mail. Ind. Code §§ 6–8.1–3–11 & 6–8.1–5–1 (1998). As the Court of Appeals noted, if these notices are not received by the taxpayer, the taxpayer's "first notice of an alleged deficiency might well be a personally served subpoena in proceedings supplemental in a court of general jurisdiction commanding appearance on pain of contempt." *Deaton,* 738 N.E.2d at 699.

The Deatons do not have standing to raise this issue. This Court has held that "the standing requirement mandates that courts act in real cases, and eschew action when called upon to engage only in abstract speculation." *Pence v. State,* 652 N.E.2d 486, 488 (Ind.1995). As a general proposition, "for a private individual to invoke the exercise of judicial power, such person must ordinarily show that some direct injury has or will immediately be sustained." *Id.* The Deatons have not alleged that they did not receive full and complete notice of all administrative and judicial proceedings against them.

There are a number of administrative and judicial remedies potentially available to a taxpayer who contends that he, she, or it has been the subject of a proceeding supplemental without becoming aware of a dispute with the Department. If all fail, and the issue of adequate notice arises, we can address it at that time. We note, however, that this Court affirmed the constitutionality of notice by first class mail in the context of the abandoned vehicle statute in *Holmes v. Randolph,* 610 N.E.2d 839 (Ind.1993). We also observe that under the statutory scheme our General Assembly has conceived, before proceedings supplemental can begin against a taxpayer for an alleged deficiency, the Department must send at least three separate mailings to the address the taxpayer provided on the tax return in question. The first of these mailings, the assessment notice, typically would be sent within one year of the Department's receipt of the return. During that year, mail for which the taxpayer had left a forwarding address should be forwarded in the normal course.

### Conclusion

The judgment of the Shelby Superior Court is reversed, and this action is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.